In re Lilly C. **ANDERSON**, aka L.C. Gross, Debtor.

Bankruptcy No. 83–00089.

United States Bankruptcy Court, D. Hawaii.

April 16, 1985.

Gregory P. Conlan, Honolulu, Hawaii, for movant.

James N. Duca, Honolulu, Hawaii, for debtor.

Terry L. Day, Honolulu, Hawaii, for Trustee.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW RE: BANK OF
HONOLULU'S ATTORNEY'S FEES
AND EXPENSES

JON J. CHINEN, Bankruptcy Judge.

On October 17, 1984, Bank of Honolulu ("Bank") filed a motion for an award of

expenses, including a request for certain attorney's fees. Hearings on Bank's motion were held on October 25, 1984 and February 4, 1985. The Bank was represented by Gregory P. Conlan, Esq.; the trustee, Terry L. Day, Esq. appeared on behalf of herself; Lilly C. Anderson, aka L.C. Gross ("Debtor") was represented by James Duca, Esq.; and Caroline Winchester was represented by R. Steven Geshell, Esq. Based on the application for fees and expenses, affidavit of counsel, memoranda in support of and in opposition to the application for fees and expenses, the evidence adduced at the hearings and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On March 4, 1978, Bank, as vendor, and Debtor, as vendee, entered into an agreement of sale with respect to certain leasehold property situate at 565 Portlock Road, Honolulu, Hawaii ("Agreement of Sale").

2. The purchase price of the property was $825,000.00 and the maturity date of the Agreement of Sale was March 14, 1983.

3. Paragraph 16(a)(3)(i) of the Agreement of Sale provides that Debtor is to pay all expenses, including attorney's fees, which the Bank reasonably may incur in enforcing its rights under the Agreement of Sale.

4. Paragraph 10 of the Agreement of Sale provides that Debtor is to pay utility rates and all other charges which become legally payable with respect to the property or its use which are assessed against the Bank or Debtor.

5. Paragraph 12 of the Agreement of Sale provides that, if Debtor by any act or neglect causes the Bank's title or interest in the property to be placed in jeopardy, the Bank may cure any such default, and debtor is required to repay to the Bank the full cost and expense, including attorney's fees, incurred in curing such default, together with interest at the rate of 10% per annum.

6. On December 12, 1980, the Bank filed a complaint in the Circuit Court of the First Circuit (Civil No. 63797) to cancel the Agreement of Sale and retain all payments made by Debtor or, in the alternative, to foreclose Debtor's interest in the Agreement of Sale. Paragraph 19 of the Agreement of Sale specifically provides for these alternative remedies.

7. From the time the complaint was filed through the present, the law firm of Chun, Kerr & Dodd has represented the Bank in these various proceedings.

8. On May 11, 1981, the Circuit Court of the First Circuit entered its order in Civil No. 63797 granting the Bank's motion for summary judgment. In that order, the Circuit Court did not cancel the Agreement of Sale, but treated the Bank's action as an acceleration of all amounts due and owing under the Agreement of Sale and decreed foreclosure of the property if the Debtor failed to pay the amounts due within 45 days from May 1, 1981.

9. Debtor failed to pay the amounts due within the time specified and a decree of foreclosure was entered in Civil No. 63797 on July 10, 1981.

10. On August 4, 1981, Debtor filed a notice of appeal from the decree of foreclosure.

11. At the time that Debtor noticed her appeal, the Debtor owed the Bank approximately $755,000.00 in principal under the Agreement of Sale and several thousand dollars in unpaid interest.

12. Because the Debtor's appeal would result in a delay in the enforcement of the decree of foreclosure, the Bank cross-appealed the Circuit Court's denial of its right to cancel the Agreement of Sale.

13. The issues on appeal dealt with (1) whether the decree of foreclosure was void for uncertainty because it did not specify the specific amount due and owing under the Agreement of Sale; (2) whether Debtor could cure her defaults after Bank's decision to accelerate the Agreement of Sale; (3) whether the May 11, 1981 order granting the Bank's motion for summary judg-

ment was a final order for purposes of appeal; and (4) whether Bank was entitled to cancellation.

14. While Civil No. 63797 was on appeal, the Bank brought a separate action against Debtor in the Circuit Court of the First Circuit (Civil No. 69953) to collect approximately $19,000.00 in electrical charges due under the Agreement of Sale. On December 20, 1982, a judgment in the amount of $23,270.28 was entered in favor of the Bank and against the Debtor. This judgment included an award of $4,560.00 in attorney's fees.

15. On December 3, 1982, the Intermediate Court of Appeals affirmed the decision of the Circuit Court in Civil No. 63797 in its entirety. *See Bank of Honolulu v. Anderson*, 3 Hawaii App. 545, 654 P.2d 1370 (1982). As a result, the Bank was permitted to go forward with the foreclosure of the property, although it was not permitted to cancel the Agreement of Sale.

16. On December 13, 1982, Debtor filed a writ of certiorari which was opposed by the Bank. On December 21, 1982, the Hawaii Supreme Court refused to grant certiorari and a judgment on appeal was entered on January 5, 1983.

17. Subsequent to the entry of the judgment on appeal, commissioners were reappointed for the purpose of selling the property. However, before a foreclosure sale could be effected, the Debtor filed her voluntary petition under Chapter 11 on February 18, 1983.

18. At the time that the Debtor filed her petition, no payments had been received by Bank on the Agreement of Sale since May 1981. After the petition was filed, no payments were received by Bank on the Agreement of Sale until August 23, 1984.

19. In June of 1983, the Debtor owed the Bank approximately $940,000.00, including principal, interest, expenses and attorney's fees incurred up to that date.

20. On December 20, 1983, Terry L. Day was appointed trustee over the objection of the Bank. The trustee was directed to sell the property by May 31, 1984 for an amount sufficient to pay the Bank all amounts owed under the Agreement of Sale.

21. On July 31, 1984, an order was entered permitting the trustee to sell the property free and clear of the Bank's interest for $1.2 million. The order also established a procedure for the payment of the Bank's expenses and for objections made by the Trustee.

22. Pursuant to the provisions of the July 31, 1984 order, the Bank filed, on August 9, 1984, the affidavit of Norman Y.M. Lee specifying the expenses it had incurred since the filing of the original action in the Circuit Court of the First Circuit.

23. The expenses incurred by the Bank included payments for attorney's fees, lease rent, real property taxes, electricity, and other items connected with the property. As of the date of the affidavit, the expenses incurred by the Bank totaled $82,-764.23, plus $13,970.76 in interest on those expenses.

24. On August 24, 1984, the Bank was paid a total of $1,024,483.32 by the trustee. This payment included $755,711.00 in principal, $217,033.99 in interest at the rate of 8¾% per annum from and after May 11, 1981, and $51,738.33 in expenses and interest. The trustee withheld $25,000.00 of attorney's fees, $13,970.76 in interest, $1,200.00 for electrical equipment expenses, and $4,825.90 for repairs to a bridge on the property.

25. On January 7, 1985, the Bank filed the affidavit of its counsel regarding attorney's fees. Attached to this affidavit were the backup for the invoices for the period from June, 1981 through June, 1984 which were previously submitted with Mr. Lee's affidavit. Also included with the affidavit of counsel were invoices for attorney's fees paid by Bank for the period from July 1984 through November 1984 in the total amount of $11,712.65, including the 4% general excise tax and costs and other advances, and invoices showing that a total of

$1,437.57 was due for electricity provided by Bank to the Debtor. The total amount of attorney's fees paid by Bank from June, 1981 through June, 1984 was $50,989.46. This amount included the 4% general excise tax and all costs and other advances. Included within the total was $4,742.40 in attorney's fees incurred by the Bank in connection with its efforts to have the debtor pay certain electricity charges due under the Agreement of Sale. Since the Circuit Court in Civil No. 69953 awarded the Bank a total of $4,560.00 in attorney's fees, the amount of attorney's fees claimed by Bank for the period June 1981 through June 1984 was reduced by $182.40.

26. Objections to the Bank's application for expenses, including attorney's fees, were filed by the trustee and by Caroline Winchester. The trustee objected to $27,370.68 of the attorney's fees claimed by Bank while Ms. Winchester objected to $36,807.00 of the attorney's fees claimed by the Bank. The basis of both sets of objections is that the Bank is not entitled to attorney's fees with respect to those matters on which it was not the "prevailing party".

27. The trustee withdrew her previous objections to the $1,200.00 cost with respect to electrical equipment and to the $4,825.90 for bridge repair. She also agreed to pay the balance of the electrical charges in the amount of $1,437.57. Ms. Winchester objected to the payment of any of these expenses.

CONCLUSIONS OF LAW

There are several issues presented to this Court:

a. Is Bank entitled to all of the fees incurred in Civil No. 63797, including the fees for the cross-appeal, even though the Bank did not prevail in its cross-appeal?

b. Is the Bank entitled to attorney's fees in Civil No. 69953, where the Bank obtained a judgment in the State Circuit Court against debtor for electrical charges due under the Agreement of Sale?

c. Is the Bank entitled to its costs, including attorney's fees for the other actions which it commenced, including actions in which it did not prevail?

d. Is the amount of fees and costs requested reasonable?

e. Is the Bank entitled to interest on the attorney's fees? If so, what is the applicable rate?

**I. Is the Bank entitled to all of the attorney's fees incurred in Civil No. 63797?**

■ 1. By affirming the Agreement of Sale, debtor was bound by the express terms and conditions contained in the Agreement of Sale. As a result, the debtor was bound to pay reasonable attorney's fees incurred by the Bank in enforcing its rights upon debtor's default under the Agreement of Sale.

■ 2. Bank's entitlement to pre-petition attorney's fees depends on whether this Court determines that the Bank prevailed on the disputed main issues in the Circuit Court actions (Civil Nos. 63797 and 69953). The Bank, however, need not prevail on every issue presented. *Food Pantry v. Waikiki Business Plaza, Inc.*, 58 Hawaii 606, 607, 575 P.2d 869 (1978).

■ 3. The prevailing party rule requires that litigation be viewed in its entirety for the purpose of determining entitlement to attorney's fees. Instead of focusing on which party prevailed on each individual issue or motion, the court must determine who prevailed on the main issues. In *Food Pantry*, the Court did not bifurcate or apportion attorney's fees on the basis of individual motions or issues. There, the Court determined that Waikiki Business Plaza was the prevailing party for the purpose of awarding attorney's fees even though it lost on the issue of lease cancellation.

■ 4. In Civil No. 63797, the main issue was the Bank's entitlement to immediate payment of the amounts due under the Agreement of Sale because of the debtor's default. Cancellation of the Agreement of Sale or its foreclosure were alternate meth-

ods of achieving the same remedy. Foreclosure would have resulted in the property being sold by commissioners appointed by the Circuit Court; cancellation would have resulted in the property being sold by the Bank. Because the Debtor had cured her default under the Agreement of Sale, the Debtor objected to immediate payment of the balance due under the Agreement of Sale and sought to have the Agreement of Sale continued according to its terms until maturity. The Bank prevailed on this disputed issue and as the prevailing party was entitled to its attorney's fees. The trustee and Ms. Winchester recognize this fact because they do not dispute any attorney's fees incurred by the Bank in connection with this issue.

■ 5. While there were a number of issues raised by Debtor on her appeal and by the Bank on its cross-appeal, the basic issue remained the same: whether the Bank was entitled to immediate payment either by foreclosure of the Agreement of Sale or by its cancellation and subsequent sale. On this disputed issue, the Bank prevailed, for the decree of foreclosure entered in Civil No. 63797 was upheld.

6. The trustee and Ms. Winchester argued that while the Bank may have prevailed at the trial level in Civil No. 63797, the Bank did not prevail on its cross-appeal and is therefore, not entitled to attorney's fees incurred with respect to the cross-appeal. This analysis is not supported by *Food Pantry*, which requires that litigation be viewed in its entirety. Thus, the court must decide who prevailed on the main issue rather than on each individual issue. Viewing the litigation in its entirety, this Court determines that the Bank prevailed on the main issues. The Bank is thus entitled to the reasonable attorney's fees it incurred in Civil No. 63797, both at the trial and appellate levels.

## II. Is the Bank entitled to attorney's fees in Civil No. 69953?

■ 7. In Civil No. 69953, the Bank sought to recover the electricity charges it had paid on Debtor's behalf. The Bank prevailed on all issues and obtained a judgment which included attorney's fees in the amount of $4,560.00. On August 13, 1984, this court entered its order approving a stipulation requiring the trustee to pay the Bank in accordance with the judgment. That stipulated order was not appealed from and is not subject to collateral attack by the debtor, the trustee or any of the debtor's creditors. As a result, there is no basis for the trustee or anyone else to object to those attorney's fees. This court, therefore, upholds the Bank's entitlement to its attorney's fees in Civil No. 69953.

## III. Is the Bank entitled to its costs, including attorney's fees for the other actions it commenced, including actions in which it did not prevail?

8. Paragraph 12 of the Agreement of Sale provides as follows:

12. ADVANCES BY VENDOR. If Purchaser fails to effect and keep in force the insurance mentioned in paragraph 11, to pay any of the taxes, excises, assessments, rates and charges mentioned in paragraph 10, or to discharge any lien described in paragraph 8, or, by any other act or neglect, causes Vendor's title or interest in the property to be placed in jeopardy, Vendor may effect, pay or discharge the same. Purchaser shall repay to Vendor the full cost and expense, including counsel's fees, incurred by Vendor in curing such default on Purchaser's part, together with interest thereon at the rate of ten percent (10%) per annum.

9. The pertinent provisions of Paragraph 16 of the Agreement of Sale reads as follows:

16. Expenses. In connection with this agreement and its enforcement:

a. Purchaser shall pay ... (iii) all expenses, including counsel's fees, which Vendor reasonably may incur in enforcing his rights hereunder; ...

b. Vendor shall pay ... (iii) all expenses, including counsel's fees, which Purchaser may incur in enforcing his rights hereunder.

10. Paragraph 19 of said agreement provides that, upon the occurrence of any default and the continuance of such default for a period of fifteen (15) days or more, the Bank may,

a. Institute a suit for money

b. Cancel the agreement by giving written notice and repossess the property

c. Cancel the agreement, treat Debtor's interest as a mortgagor's interest, and sell the property.

All of the foregoing provisions provides for attorney's fees.

11. *Motion for Contempt.* The Bank brought contempt proceedings as the result of Debtor's violation of a state court order in which the state court ordered the Debtor to deposit a certain sum with the Clerk of the First Circuit Court as additional security for Debtor's obligation to the Bank. Without informing the state court, the Debtor withdrew $130,000.00 of the funds which were on deposit. As a result, the Bank brought contempt proceedings against the Debtor and moved to have the Debtor removed from the property. The Debtor was found to be in contempt and was required to leave the premises.

12. The state court ordered the Debtor to make the deposit to protection the Bank's interest in the Portlock property. To protect its interest, the Bank brought the contempt proceedings and moved to have the Debtor removed from the premises. Under Paragraph 12, the Bank is entitled to its costs including attorney's fees.

13. *Motion to Remove Trustee.* The Bank's attempt to remove the trustee who had been appointed by this Court was denied. Thus, the Bank is not entitled to costs, including attorney's fees, for this action.

14. *Motion to Lift Stay.* The Bank's motion to have the automatic stay lifted so that it may continue its foreclosure action in the state court was denied. In addition, the Court found sufficient equity in the Portlock property to adequately protect the Bank. The Court directed that the trustee assume or reject the Agreement of sale, not immediately as requested by the Bank but within a reasonable time set by the Court. This was an alternative request to the Motion to Lift stay, which was the primary purpose of Bank's motion. Since the Bank's primary motion to lift stay was denied, the Bank is not entitled to its costs, including attorney's fees for this motion.

15. *Revision of main electrical switch.* Under the Agreement of Sale, the Bank was required to provide electricity to the Debtor's property. Likewise, under the Agreement of Sale, the Debtor was required to pay for the electrical services. However, the Debtor failed to make payments as required under the Agreement of Sale. In such an event, the Agreement of Sale provided the Bank with certain remedies.

Instead of relying on the remedies available under the Agreement of Sale, the Bank expended $1,200.00 to revise the main switch so that the Bank did not have to advance the electrical bills. This action was taken, prior to the Debtor's bankruptcy petition, by the Bank for its own benefit and was not in compliance with the remedies available under the Agreement of Sale. The Bank, therefore, is not entitled to reimbursement of the $1,200.00.

16. *Additional electrical bills.* The remaining amount of $1,437.57 for the use of electricity through the end of the estate's use of the property is properly chargeable to the estate. If this amount has not been paid, this sum shall forthwith be paid to the Bank which will forward it to Hawaiian Trust.

17. *Repair of Bridge.* The Bank incurred $4,825.90 in expenses to repair the bridge across the harbor, which repair was mandated by the State Department of Transportation. Failure to repair the bridge could have resulted in a loss of the harbor permit which would have significantly decreased the value of the property. The Bank was required under the terms of

its sublease with H.V. Sturkie to make the repairs. This Court finds that the amount spent was reasonable and necessary and orders that the trustee shall reimburse the Bank the sum of $4,825.90 for the repairs.

 18. *Assumption of Executory Contract.* Bank opposed the trustee's motion to assume executory contract and lost. Thus, it is not entitled to its costs, including attorney's fees, on this issue.

### IV. Is the amount of fees and costs requested reasonable?

 19. Where Debtor's estate is to pay attorney's fees, it is the responsibility of the attorney to provide the court with time-sheets that clearly set forth in detail the type of service rendered and the time spent for each service. As was stated in *In re Horn & Hardart Baking Co.*, 30 B.R. 938, (Bankr.E.D.Pa.1983),

> [t]he Court should not be required to indulge in guesswork, nor undertake extensive labor to justify a fee for an attorney who has not done so himself. We do not find it to be an unbearable burden to require an attorney seeking compensation to enlighten the Court as to the nature of his toil and the relation it bears to the matter at hand. Absent such a statement, compensation may not be allowed.

*Id.* at 944.

And, in *In re Nation Ruskin, Inc.*, 22 B.R. 207 (Bkrtcy.E.D.Pa.1982) the Court stated:

> General statements will not justify fee awards. Lumping-together services and failure to adequately specify how much time has been expended for each individual service is not acceptable for the Court's inspection and evaluation.

*Id.* at 210.

 In reviewing the time-sheets submitted by Bank's attorney, the Court is unable to determine which services are entitled to compensation without spending considerable time in analyzing each item. As stated in *In re Horn*, the Court should not be required to undertake extensive labor to justify a fee for an attorney.

Thus, in the instant case, the Court is requiring the attorney for the Bank to submit separate time-sheets for the fees and costs which this Court has allowed for the following matters:

a.  Civil No. 63797

b.  Civil No. 69953

c.  Motion for Contempt

d.  Additional electrical bill for $1,437.57

e.  Repair of bridge

After receipt of the additional information, the Court will determine the total amount of fees that are to be awarded to Bank's attorney.

A separate Memorandum Decision will be issued by the Court on the issue of interest on attorney's fees.