**In re KYRAN RESEARCH ASSOCIATES, INC., Debtor In Possession.**

**Bankruptcy No. 8500121.**

United States Bankruptcy Court,
D. Rhode Island.

Jan. 10, 1986.

Robert O. Resnick, Cullen & O'Connell, Boston, Mass., for debtor.

**1.** This decision constitutes our findings of fact and conclusions of law. *See* Bankruptcy Rules 7052 and 9014, and Fed.R.Civ.P. 52.

## DECISION AND ORDER ON APPLICATION FOR COMPENSATION BY ATTORNEY FOR DEBTOR IN POSSESSION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the application of Robert Resnick, Esq., of the firm of Cullen & O'Connell, for compensation in the amount of $16,795 for services rendered as counsel for the debtor. The applicant previously received a retainer of $10,000 and he is seeking an additional $7,015.62.

In this case, the Chapter 11 plan of reorganization, confirmed on October 18, 1985, provides for payment on the effective date of the plan, of 1) administrative expenses in the amount of $8946; 2) arrearages of $2,609.24 on secured loans; and 3) all claims under $100 (totalling $172.47). The plan also provides for payment in full over six years of priority taxes of $15,756.97, and a 40% dividend over three years to unsecured creditors totalling $165,683.22. Plan of Reorganization at 3–4; First Amended Disclosure Statement at 5–7; Plan of Reorganization, Exhibit D. While recognizing the value and quality of counsel's services, particularly in formulating and drafting the confirmed Chapter 11 plan, in light of the following considerations we find the requested fee to be excessive:[1]

1. The fee sought by the applicant includes a charge of $2125 for services performed in July and August of 1984 by Elyse Brill, an attorney affiliated with Cullen & O'Connell, and for that period we find considerable duplication of effort by Mr. Resnick and Ms. Brill in connection with telephone conferences and meetings with the debtor, and drafting the Chapter 11 petition. Application for Fee at 2, 4. *See In re Potter's Gasoline Distribution, Inc.,* 41 B.R. 771 (Bankr.D.R.I.1984); *In re Sapolin Paints, Inc.,* 38 B.R. 807, 811 (Bankr.E.D.N.Y.1984).

■ 2. It has not been demonstrated that this case presented difficult questions requiring extensive legal research, development of novel legal theories, or sophisticated legal expertise. Considering the nature of the legal work required to handle and conclude this routine Chapter 11 case, the time charged for many of the services is either excessive, unsupported or unjustified. *See In re Casco Bay Lines, Inc.,* 25 B.R. 747 (B.A.P. 1st Cir.1982); *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705 (Bankr.W.D.Ky.1982); *In re Liberal Market, Inc.,* 24 B.R. 653, 664 (Bankr.S.D.Ohio 1982). For example, the time spent developing, preparing, and filing the petition (approximately 37 hours) is entirely too high, absent reasonable explanation. *See* Application for Fee at 1–2. We also have difficulty accepting the accuracy of entries for days where the hours logged seem extraordinarily high. *See, e.g.,* Application for Fee at 2, 7 (entry of July 25, 1984 for 7.25 hours; entry of May 16, 1985 for 9.5 hours).

■ 3. The applicant is seeking compensation in the amount of $1350 for

> [e]stimated time for preparing for confirmation hearing, resolving confirmation objections; confirmation hearing and post confirmation legal and administrative matters.

Application for Fee at 10.

In this regard the record shows, and indeed counsel pointed out at the hearing on confirmation, that this was a smooth case, with unanimous creditor acceptance of the plan. Since it is the Court's responsibility to ensure that the estate pays only for *actual* services rendered, we cannot compensate Mr. Resnick for future services which at this time are speculative and un-

substantiated. Compensation for post confirmation services should be applied for and allowed in the same manner as other bankruptcy services. *See In re Liberal Market, Inc., supra,* at 663.

■ 4. While we do not expect pinpoint accuracy in estimating the length of telephone conferences, we are skeptical that *all* "telephone conferences" lasted for at least fifteen minutes. Although in some quarters it may be standard practice to bill a consenting client for a minimum time increment regardless of the actual duration of the call, in bankruptcy we do not feel justified in allowing the applicant's request for compensation for more than 25 telephone calls totalling in excess of 10 hours. Furthermore, telephone calls such as those described in the application, which are basically informational or conversational, do not rate compensation at the applicant's highest hourly rate. *See In re Sapolin Paints, Inc., supra,* at 811. We also question the reasonableness of the total number of hours charged for telephone conferences (50.5). *See* Application for Fee at 1–10.

■ 5. Although fee applications are almost never subject to adversarial scrutiny, we are not bound to accept even uncontested allegations of services provided, if the record indicates (as it does here) that the value of the services performed is less than the dollar amount requested. *In re Liberal Market, Inc., supra,* at 658. In addition to the number of hours actually logged, it is also necessary to consider time reasonably and necessarily spent. *In re Crutcher Transfer Line, Inc., supra,* at 710. Accordingly, having considered the standards for awarding compensation in 11 U.S.C. § 330,[2] the twelve factors[3] dis-

**2.** § 330. Compensation of officers

(a) After notice and a hearing ... the court may award ... to the debtor's attorney—
  (1) reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual necessary expenses.

**3.** 1) The time and labor required 2) the novelty and difficulty of the questions presented 3) the skill required to perform the legal services 4) the preclusion of other employment due to acceptance of the case 5) the customary fee in the community 6) whether the fee is fixed or contingent 7) the time limitations imposed by client or circumstances 8) the amount involved and the

cussed in *King v. Greenblatt*, 560 F.2d 1024 (1st Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), and the "lodestar" [4] approach adopted by the First Circuit in *Furtado v. Bishop*, 635 F.2d 915 (1980), we hold that the applicant is entitled to compensation in the amount of $14,000, and $220.62 for reimbursement of expenses. While the hourly rate of $90 is reasonable with respect to most of the services performed, our obligation to deny compenation for excessive, unnecessary and duplicative hours, requires that the request be reduced.

---

results obtained 9) the experience, reputation and ability of the attorney 10) the undesirability of the case 11) the nature and length of the professional relationship with the client 12) awards in similar cases.

**4.** This approach, which was developed in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.

1973), involves a calculation of the "lodestar" (number of hours reasonably expended multiplied by a reasonable hourly rate) which is then adjusted to reflect other considerations such as the contingent nature of the fee, delay in payment, quality of representation, and results obtained.