**In re R & B INSTITUTIONAL SALES, INC., Debtor.**

**Bankruptcy No. 85–2032.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 2, 1986.

Robert J. Dodds, Jr., Reed Smith Shaw & McClay, Lawrence F. Leventon, Leventon & Leventon, P.C., Special Counsel, Pittsburgh, Pa., for debtor.

Joseph J. Bernstein, Bernstein and Bernstein, P.C., Pittsburgh, Pa., for Committee Of Unsecured Creditors.

### MEMORANDUM OPINION and ORDER OF COURT

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court are the Fee and Expense Applications filed by the Debtor's counsel, the Debtor's special counsel, the Debtor's accountant, and the attorney and accountant for the Committee of Unsecured Creditors ("Committee"). Prior to reviewing these applications, we present a synopsis of the case.

This bankruptcy began with the filing of a Chapter 11 petition on September 10, 1985. On October 3, 1985, this Court authorized the employment of both counsel and the accountant for the Committee. The Court appointed Debtor's counsel on October 15, 1985, and the Debtor's accountant on November 11, 1985. On January 3,

1986, this Court appointed the Debtor's special counsel, nunc pro tunc, to the date of filing. This counsel was appointed because of his averment to this Court that counsel would provide a significant benefit to the estate. This was and is the only nunc pro tunc appointment requested or authorized. It now appears that this appointment may have been granted improperly. *See Matter of Arkansas Company, Inc.*, 798 F.2d 645 (3rd Cir.1986), discussed *infra*.

The Debtor's first Disclosure Statement and Plan of Reorganization was filed on December 20, 1985. The Committee and Mellon Bank objected to the Disclosure Statement and Plan. On the date set for the hearing thereon, January 28, 1986, the Court refused to approve the Disclosure Statement.

The Debtors filed an Amended Disclosure Statement and Plan on February 28, 1986. On April 14, 1986, two days prior to the hearing date set for the Amended Disclosure Statement, the Debtor submitted its second Amended Disclosure Statement. This was approved on April 16, 1986. The Debtor filed its second Amended Plan on April 30, 1986; this Plan was confirmed on May 27, 1986, and the Order was signed on June 3, 1986.

Early in this case, the Court was advised by counsel to the Debtor that this was an uncomplicated matter, and would ultimately come to a simple resolution. The Court, after an independent review of the file, has been given no reason to come to a different conclusion.

There was, however, one curious set of circumstances in this case. Prior to the filing of the bankruptcy, the Debtor's principals liquidated a building in which the corporation's business was located. The Court is led to believe that the Debtor's principals had an individual responsibility for payment on said building.

The Debtor then moved its operations to another building, belonging to a partnership, consisting of the Debtor's principals. A lease was executed wherein the Debtor was to pay the partnership $5,000.00 per month for the use of the facility. Additionally, over $140,000.00 worth of improvements were performed on this building by the Debtor. Within several months after the lease was executed, the Debtor ceased doing business. The Debtor claims, in its Disclosure Statement, that it gave up its rights in the leasehold improvements in exchange for the release by the partnership of its claim for rents due pursuant to the rejected lease.

Without knowing the length of the lease term, or the efforts by the partnership to mitigate its damages, it is impossible to determine if in fact this was an appropriate agreement. We question this activity only in light of the fact that the write-off of an asset worth over $140,000.00 leaves the unsecured creditors with a return of only one-cent-on-the-dollar.

In any event, it appears to the Court that the most complicated matter in this case has been the fee applications presented by the various parties. Before addressing these applications seriatum, we offer a brief analysis of the law on this issue.

Section 330 of the Bankruptcy Code [11 U.S.C. § 330] states in pertinent part:

(a) After notice and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to the trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney as the case may be ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Bankruptcy Rule 2016 further states:

(a) *Application for Compensation or Reimbursement.* A person seeking interim or final compensation for services, or reimbursement of necessary ex-

penses, from the estate, shall file with the Court an application setting forth a detailed statement of (1) the services rendered, time expended, and expenses incurred, and (2) the amounts requested . . .

This Court has previously outlined its position on review of fee applications in *Matter of Affinito & Son, Inc.*, 63 B.R. 495 (W.D.Pa., 1986), wherein we stated:

The Bankruptcy Court has the independent authority and responsibility to determine the reasonableness of compensation. *In re N.S. Garrott & Sons*, 54 B.R. 221, 222 (Bktcy.E.D.Ark.1985); *In re Smith*, 48 B.R. 375, 379 (Bktcy.C.D.Ill. 1984); *In re Meade Land and Development Company, Inc.*, 527 F.2d 280, 283 (3rd Cir.1975). However, the burden of proof as to the reasonableness of requested compensation is that of the applicant. *In re Holthoff*, 55 B.R. 36, 39 (Bktcy.E.D.Ark.1985); *In re Nashville Union Stockyard Restaurant Company, Inc.*, 54 B.R. 391, 396 (Bktcy.M.D. Tenn.1985); *In re Smith, supra; In re Meade Land and Development Company, Inc., supra.*

In addition to these requirements outlined in Bankruptcy Rule 2016, a proper application must list each activity separately, the date on which it was performed, the attorney who performed the work, a description of the work performed or the subject matter of the work, and the time spent on the work. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221, (Bktcy.N.D.Ill.1985); *In re Anderson*, 49 B.R. 725, 733 (Bktcy.D.Haw. 1985); *Cohen & Thiras, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570, 573 (D.C. N.D.Ind.1984).

The standard for review of an accountant's application is the same as the standard which applies to requests for attorneys' fees. *In re Daig Corporation*, 48 B.R. 121, 136 (Bktcy.D.Minn.1985); *In re Cumberland Bolt & Screw, Inc.*, 44 B.R. 915, 916 (Bktcy.M.D.Tenn.1984).

*Id.*

The factors upon which the reasonableness of the professional fee is judged are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions presented;

(3) the skills requisite to properly perform the legal services;

(4) the preclusion of other employment by the attorney due to conflicts of interest or lack of time;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) the time limitations, usually occurring if counsel is called into the case at a late stage in the proceedings;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the undesireability of the case, as it affects the professional's reputation in the community;

(11) the nature and length of the professional relationship with the clients; and

(12) the awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718–19 (5th Cir.1974).

## DEBTOR'S COUNSEL

On March 12, 1986, this Court entered an Order deferring any compensation to this party pending a transmittal setting forth a more complete explanation of the time expended and its relevance to this case.

This Order was entered for two reasons: first, and foremost, counsel's application included massive entries which were far too ambiguous to be compensable; additionally, there appeared to be significant amounts of duplicative time, wherein two or even three attorneys from this one firm would spend blocks of time conferring, each charging the estate his hourly rate for these meetings.

In counsel's final application, this problem was not rectified, even though it had been directed to do so by the March 12, 1986 Order. Counsel did preface its item-

ized time sheets with several narrative paragraphs, which purport to explain the activities conducted. While this is not the explanation requested, we will address these paragraphs before discussing the actual time sheets.

■ Counsel claims it was required to devote a great deal of work during the early period of this case to unforeseen matters, not normally associated with a Chapter 11 case. What those matters might be has yet to be explained in any manner to this Court. The Court cannot accept additional generalities as an explanation of the original ambiguities.

Counsel also claims to have spent an excessive amount of time assembling data needed in order to file the necessary Schedules, and attributes this to the Debtor's lack of in-house counsel, forcing this counsel to work with non-attorney employees. However, counsel makes no reference in its time sheets to meetings or conferences with any such non-attorney employees. Further, Debtor's special counsel, who first brought this case to this party, shows significant amounts of time spent cataloging, summarizing, and transmitting all of the Debtor's information to this counsel. What additional "unusual" work might have been required is unknown to this Court.

■ Counsel further refers in its narrative to the massive amounts of time spent drafting the original, amended, and second amended Disclosure Statements and Plans. This excess time expense is attributed to the efforts of the Committee. However, counsel should be aware that neither the original nor the amended Plan was confirmable with or without the consent of the Committee, and that the second amended Plan was, at best, only marginally confirmable. In fact, this Court on many and various occasions has second-guessed itself and has reviewed the propriety of confirming this Plan.

Counsel mentions in this narrative that it reduced its total request for the period of January 15 to April 21, 1986 by seventy percent (70%). While this initially appears to be a truly charitable effort, it must be recognized that without such a reduction, the minuscule return presently allotted for the unsecured creditors under the Plan would be consumed by these fees. This reduction, therefore, appears to be a settlement effort by Debtor's counsel to insure the confirmation of its second amended Plan.

■ Turning to the actual time sheets, this Court finds scores of difficulties. Our first dissatisfaction is with the hourly wage requested by several of the attorneys who represented the Debtor. We reiterate that by counsel's own admission, this was a simple liquidating Chapter 11 case, involving no unique legal issues. Because of this acknowledgment, the Court is hard pressed to understand the need for excessive senior partner involvement at hourly rates of $170–$180. If in fact this case required many hours be invested by such attorneys, the very least this Court should receive is a detailed recitation of the work they performed, as well as an explanation of the need for senior partner involvement. To date, no such time breakdown has been received.

■ A total of 55.8 hours charged at $170–180 per hour, and totaling $8,878.08 [1] was spent on items variously labeled as "bankruptcy matters", "research", "numerous telephone calls", and "meetings". No further explanation of the substance of this time has been proffered. Not only is the hourly rate for this time excessive, but it is also thoroughly ambiguous. This Court has previously stated that:

> Records which give no explanation of the substance of the activities performed are not compensable. *In re Kyran Research Associates, Inc.*, 56 B.R., 629, 631 (Bktcy.D.R.I.1986); *In re General Oil Distributors*, 51 B.R. 794, 801 (Bktcy.E. D.N.Y.1985); *Cohen & Thiras, P.C. v.*

1. This total takes into account the "reduced average rate" of $90.62 per hour for all counsel, both partner and associate, for the period of January 15, 1986 to April 21, 1986.

*Keen Enterprises, Inc., supra; In re Hotel Associates, Inc.,* 15 B.R. 487, 488 (Bktcy.E.D.Pa.1981).

*Matter of Affinito & Son, Inc., supra.* As counsel has had more than ample opportunity to clarify these matters, and has chosen not to do so, no compensation for this time will be awarded.

Two additional partners, billed at $165 and $145 per hour respectively, and totaling $1,980.49 [2], presented a total of 13.52 hours for compensation, which is equally excessive and without sufficient explanation, and is therefore not compensable.

Additionally, while the hourly rate of $65.00 billed for associate work is not in and of itself excessive, the time sheets submitted indicate an additional 30.5 hours, totaling $2,488.02 [3], which can only be labeled as ambiguous. This attorney also had ample opportunity to provide additional information and has not done so. Therefore, no compensation for such time is awarded.

The Court is also profoundly concerned about the number of duplicative hours spent by the various members of this firm in meetings between and among themselves. The following hours are so attributable:

    13.00 hours @ $170.00, or, $1,654.34
     3.00 hours @ $165.00, or, $  495.00
     1.10 hours @ $145.00, or, $  159.00
    16.75 hours @ $ 65.00, or, $  884.97 [4]

■ Some of this time would be compensable if some explanation of the purpose for these meetings was proffered. Merely listing "Meeting with _____", without details, is not a compensable item. It is the Bankruptcy Court's responsibility to deny compensation for excessive and duplicative hours. *In re Yankee Seafood Corporation,* 53 B.R. 285 (Bktcy.D.R.I.1985); *In re Liberal Market, Inc.,* 24 B.R. 653 (Bktcy.S.D.Ohio 1982). The policy behind this decision was clearly stated by this Court in *Matter of Affinito & Son, Inc.,*

*supra,* when we quoted the Court in *In re Hotel Associates, Inc., supra:*

The Court does not require a fee application the size of a boring Victorian novel. However, in light of the fact that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors, the Court believes that a justification of such fees in the application for compensation is not an overly burdensome task.

Therefore, these amounts are disallowed.

■ The Court is also hard pressed to understand the excessive amounts of time charged by both partners and associates in preparing the original, amended, and seconded amended Disclosure Statement and Plan of Reorganization, in this admittedly uncomplicated liquidating Chapter 11 case. The estate is being charged $8,609.34 [5] for a Plan which ultimately would pay the attorneys and accountants in full, and present the general unsecured creditors with a return of one cent on a dollar. This is completely unacceptable. The Court will disallow fifty percent (50%) of the amount requested, or $4,304.67, and considers even that to be charitable.

One further problem occurred with the time sheets, obviously through inadvertence on someone's part. A total of 8 hours was duplicatively billed on the associate's time sheets from one period to the next. These charges are obviously not compensable, and, therefore, an additional $520.00 will be disallowed.

■ The final difficulty associated with this fee application revolves around the expenses for which reimbursement is requested. While this Court has in the past permitted reimbursement for photocopying and postage, we will not permit the estate to absorb the costs involved in "word processing". This is overhead, pure and simple, attributable to the cost of doing business, and will not be compensated.

**2.** See Footnote 1

**3.** See Footnote 1

**4.** See Footnote 1

**5.** See Footnote 1

Similarly, expenses classified only as "Miscellaneous" are far too vague to be allowed. Therefore, the sum of $844.08 attributable to expenses will be disallowed.

The fee and expense allowance to Debtor's counsel will be $9,080.21.

## DEBTOR'S SPECIAL COUNSEL

Counsel was appointed, nunc pro tunc, for the express purpose of bringing a benefit to the estate. As stated earlier in this Opinion, the Third Circuit has recently decided the case of *Matter of Arkansas Company, Inc., supra,* which deals with appointments of professionals nunc pro tunc. In her Opinion, Judge Sloviter stated:

> We thus hold that *nunc pro tunc* approval should be limited to cases where extraordinary circumstances are present. Otherwise the bankruptcy court may be overly inclined to grant such approval influenced by claims of hardship due to work already performed. In this respect we part company with those courts that have suggested that inadvertence or oversight of counsel may constitute excusable neglect sufficient to relieve the parties of the consequences of their inaction. *See In re King Electric Company, Inc.,* 19 B.R. 660 (E.D.Va.1982); *see also, In re Triangle Chemicals, Inc.,* 697 F.2d at 1289. We agree instead with the approach of those courts that limit the grant of retroactive approval to cases where prior approval would have been appropriate and the delay in seeking approval was due to hardship beyond the professional's control. *See In re Brown,* 40 B.R. 728, 731 (Bankr.D.Conn.1984); *In re Seatrain Lines, Inc.,* 15 B.R. 583, 584 (Bankr.S.D.N.Y.1981). While this may seem to be a harsh rule, a more lenient approach would reward laxity by counsel and might encourage circumvention of the statutory requirement.

Based upon this decision, we question our authority to have appointed this firm nunc pro tunc. Additionally, because the Court has serious reservations as to the firm's total performance in bringing about a benefit to the estate, we question the validity of their fees, both prior to and after their appointment.

Initially, we notice that while counsel was appointed, nunc pro tunc, so as to benefit the estate, counsel's initial time sheets relate to the period of *six (6) weeks prior* to the filing of the bankruptcy petition. As counsel was hired to bring a benefit to the estate, and as the estate was not created until the bankruptcy was actually filed, this pre-petition time is not compensable from the estate. While the Court will not review the accuracy of the time sheets, the Court is certain that these charges are more appropriately the responsibility of the Debtor, and not the estate.

Additionally, while the time sheets for counsel are generally less ambiguous than those presented by their counterparts, these offerings shed no light as to the benefit reaped by the estate as a result of these actions. In fact, most of the items listed appear to be efforts assisting the Debtor or the Debtor's counsel. It does not appear that counsel performed any duties which could not have been conducted by Debtor's regular counsel.

Quite frankly, the Court is disturbed to find that it apparently was misled into believing that special counsel was somehow essential to the formulation of a viable Plan for the creditors. It appears that counsel's only activity was to create additional expense for the estate. The Court is especially disconcerted, given the fact that the unsecured creditors of this Debtor will receive only a penny for each dollar owed. If there was a benefit to the estate created by counsel's efforts, this Court is at a loss to recognize it. We are not prepared to grant a fee request of $11,254.75 when we are unable to determine how this fee represents a benefit to the estate.

This Court has previously stated that we will not indulge in extensive labor to justify a fee for an attorney who has not done so himself. *See Matter of Affinito & Son, Inc., supra; See also, In re Horn & Hardart Baking Company,* 30 B.R. 938 (Bktcy.E.D.Pa.1983); *In re Nashville Un-*

*ion Stockyard Restaurant Company, Inc., supra.*

Based upon the foregoing analysis, the fee request made by the Debtor's special counsel will be denied, without prejudice to counsel's right to pursue same from sources other than this estate.

## DEBTOR'S ACCOUNTANT

As stated previously, an accountant's application for compensation is reviewed under the same standard applying to attorneys. *See Matter of Affinito & Son, Inc., supra; In re Daig Corporation, supra; In re Cumberland Bolt & Screw, Inc., supra.*

By Order of March 12, 1986, compensation to Debtor's accountant was deferred pending further explanation of the work performed. This party has in fact submitted explanations for most of the work performed.

The accountant was appointed by Court Order dated November 11, 1985. This appointment was not nunc pro tunc. However, a total of 63 hours of work listed occurred *prior* to the accountant's appointment. The rate charged for this work is $100.00 per hour. Therefore, $6,300.00 of the accountant's request must be disallowed.

The accountant shows 4 hours @ $100.00 per hour attributable to a meeting with the Debtor's attorneys, discussing various financial matters. While this is a bit general to suit the Court, the primary difficulty we find is that the Debtor's attorneys have attributed only 1 hour to said meeting. Based on the attorneys' fee petition, the Court is hard pressed to accept that counsel would neglect to include such a block of time. Therefore, 3 of the 4 hours so requested, totaling $300.00, will be disallowed.

The accountant's application for the month of December–1985, has not been supplemented by any additional information. "Services rendered" is an insufficient explanation. The accountant shows 13 hours for work unexplained in that month.

Accordingly, an additional $1,300.00 will be disallowed.

Additionally, the accountant's time sheet for February–1986, includes 2 hours explained as, "2 telephone calls re: various items". That two telephone calls should take 2 hours seems a bit excessive to the Court. More troubling however, is the fact that no explanation was offered as to the parties called or the nature of said calls. This time will also be disallowed.

Therefore, Debtor's accountant is awarded the sum of $5,100.00.

## COUNSEL FOR THE COMMITTEE OF UNSECURED CREDITORS

Pursuant to this Court's Order of March 12, 1986, a portion of counsel's fees were approved. Approximately $1,000.00 of the request was denied, as the Court determined that time expended by paralegals and messengers should be considered overhead, as a cost of doing business.

We were requested to reconsider that determination and have done so. We still assert that payment of messenger services is overhead. However, given the increasing use of paralegals by many attorneys to perform administrative functions previously encumbering the time of a lawyer, we agree that time spent by paralegals, as para-professionals, is compensable from the estate.

However, such compensation is subject to the same scrutiny as that of the attorney in the case. For the period of time from the appointment of this counsel through the end of 1985, counsel's paralegal performed 18.6 hours of work, and was billed at $50.00 per hour. After reconsidering the explanations of work performed by the paralegal, it appears to the Court that 8.4 hours must be disallowed, as not providing sufficient explanation of her activities. Therefore, 11.7 hours of work will be allowed and compensable.

This Court is also of the opinion that a charge of $50.00 per hour for work performed by a paralegal is highly exces-

sive, in view of the fact that said paralegal earns less than $25,000.00 per year. The Court believes that $20.00 per hour is a reasonable rate of compensation. Therefore, the Court will allow the amount of $234.00 as compensation for work performed by the paralegal prior to 1986.

Turning to counsel's final application, which covers the period of January 1986 through April 1986, the Court finds some difficulties. A quick review of counsel's time sheets shows that full or at least satisfactory explanation is sometimes offered for work performed, while other entries are too ambiguous to be at all enlightening. Clearly, counsel knows how to satisfy this Court's requirement, but in many instances has chosen not to do so.

The Court is further troubled by counsel's lack of advocacy for the creditors against the fee applications of the other professionals. As the unsecured creditors would receive only a one-cent-on-a-dollar distribution if all fees were approved, it would appear that counsel should have attacked the applications of the Debtor's professionals, to try to achieve a more equitable result for its clients. As the Court had no difficulty in finding many glaring errors, it is incredulous that an investigation by the Committee would not have been able to uncover the same.

A total of 5.2 hours billed at $125.00 per hour, totaling $650.00, is considered by this Court to be too general and will be disallowed.

A total of 4.9 hours charged at $100.00 per hour, totaling $440.00, will also be disallowed as being too general to permit compensation.

A total of 1.8 hours billed at $50.00 per hour will similarly be found not compensable, due to the general nature of the proffered explanation.

A total of 8.4 hours billed at $50.00 per hour will be reduced to $20.00 per hour, allowing a total of $168.00.

Therefore, total additional compensation allowed to counsel for the Committee will be $3,434.96.

## ACCOUNTANT FOR COMMITTEE OF UNSECURED CREDITORS

The accountants for the Committee were appointed on October 3, 1985. This appointment was not nunc pro tunc. The Court finds several difficulties with this fee petition and will address each of them individually.

■ The most disconcerting of the problems is the exorbitant hourly rates charged by this firm. Partner fees of $200.00 per hour and Associate charges of $120.00–$165.00 per hour are completely unacceptable. We recognize that this is a New York firm, and that these fees might be acceptable as usual and customary for that area; but, this is not the case in Pittsburgh. A multitude of accounting firms having local offices would have been more than competent to proceed for the Committee. This was not a complicated or difficult case. The Committee may have felt it necessary to bring in an accounting firm from another area, but it will not be the estate's responsibility to pay the difference between the hourly rate the Court deems acceptable and the rate charged. For those hours which we deem actually compensable, we will reduce the rates thusly:

$200.00 reduced to $125.00
$165.00 reduced to $100.00
$150.00 reduced to $ 90.00
$120.00 reduced to $ 75.00

■ For the same reasons outlined above, we will not compensate this firm for its travel time between New York City and Pittsburgh. Had the Committee chosen local assistance, there would not be such a time charge. While the Committee chose these accountants, it cannot expect the estate to take responsibility for such excess charges.

Turning to the actual time sheets, we find a total of 3 hours charged for the month of September–1985. Not only was this work performed prior to the firm's appointment, but the explanation of the work performed is far too general. Other entries on this applicant's time records are

extensively explained, evidencing the firm's understanding of the type of information this Court requires. This Court has previously stated that:

> While explanations in narrative form are helpful in attorney fee applications, they are imperative when the professional services rendered are other than legal in nature.

*See Matter of Affinito & Son, Inc., supra.* Therefore, these general entries are not compensable.

■ The time charged for October–1985 is explained as typing and proofreading. This is clearly an overhead expense and is not compensable.

■ The time sheet for November–1985 indicates 1 hour spent meeting with the Chairman and the attorney for the Committee. However, counsel for the Committee shows no corresponding entry of any type. This Court finds it hard to believe that counsel would have neglected to include such a time block on his time sheets; therefore, we will not compensate for that time. Additionally, a time of 1.75 hours is listed for typing and proofreading. As stated previously, this time is considered a cost of doing business and is not compensable by the estate.

■ Turning to the time entries for the month of January–1986, the Court finds many problems. First, we find a total of 4 hours spent with the Chairman and the attorney for the Committee; these meetings are completely unexplained and are, therefore, not compensable.

Additionally, we find approximately 4 hours attributable to travel between New York City and Pittsburgh. The Court notes that this is an approximation; nothing more specific can be ascertained because the accountant has "clumped" his travel time in with explanations of various accounting procedures performed. The 4-hour time period was reached by comparing these time entries against others covering the same date and activities. As stated previously, this travel time is not compensable from the estate.

The accountants informed the Court that as a result of their extensive investigation,

they uncovered a means by which the attorney for the Committee could realize a return for his clients. The accountants prepared a "Memorandum Letter" to counsel, outlining these findings. This letter took a total of 15 hours to prepare, at a cost of $2,085.00 (using the *requested* hourly rate). While the Court questions the need for such an excessive amount of time to prepare this document, especially since this time does not include the 15.5 hours of time spent on the investigation itself, we will allow the hours spent, at the *reduced* hourly rate. As previously stated, typing this letter is not a compensable item.

Finally, we reach the expenses for which the accountant requests reimbursement. Items such as "word processing" and "miscellaneous" are not compensable in this Court. Additionally, items which stem from the firm's need to travel to Pittsburgh will not be compensated. We wish to reiterate, that the Committee's choice of an out-of-town accounting firm cannot justify these charges being billed to the estate. This includes travel fares, lodging, tolls, "per diem", parking, and local fares.

The Court will award the accountant for the Committee the sum of $2,837.50 as a professional fee and $12.00 for expenses, totaling $2,849.50.