IN the Matter of AFFINITO & SON, INC., a Pennsylvania Corporation, Debtor.

Bankruptcy No. 84–195.
Motion No. 86–0044.

United States Bankruptcy Court, W.D. Pennsylvania.

July 28, 1986.

James E. Moody, CPA, Peter J. Furness, Mazzotta & Winters, P.C., Stanley E. Levine, Pittsburg, Pa., Campbell & Levine, for debtor-in-possession.

1. A & S Market, Inc. is to be converted to a Chapter 7 Liquidation. Its discussion in this

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court are Fee Petitions from the attorney for the Debtor-in-Possession and the accountant for the Debtor-in-Possession. The Court finds difficulties with each of the petitions. However, since the problems are not identical, the analysis of each petition will be handled separately.

### FACTS

Affinito & Son, Inc., and its companion case, A & S Market, Inc.[1] were Chapter 11 cases filed on January 27, 1984. With reference to the case in question, A Disclosure Statement and Plan were filed, wherein a liquidating Plan was confirmed on May 6, 1985. Thereafter, on January 3, 1986, the following documents were filed with this Court:

1) Petition For Reimbursement Of Expenses By Attorney For Debtor

2) Application By Accountants For Debtor-in-Possession

3) Final Accounting And Proposed Order Of Distribution

A hearing was held on April 28, 1986, at which time the Court was advised that:

1) The total funds received in this case are $111,883.48.

2) The total disbursements to date are $67,598.02

3) The total fees and expenses requested by the Debtor's counsel are $10,122.00

4) The total fees requested by the accountant for the Debtor are $19,452.00

5) There is outstanding a priority claim for pension funds in the amount of $3,938.00

6) There is outstanding a priority claim for taxes in the amount of $892.93

Opinion is for clarification purposes only.

7) The Plan provides for a three percent (3%) distribution to the general unsecured creditors.

## ANALYSIS OF THE LAW

Section 330 of the Bankruptcy Code [11 U.S.C. § 330] states in pertinent part:

(a) After notice and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to the trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney as the case may be ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Bankruptcy Rule 2016 further states:

(a) *Application for Compensation or Reimbursement.* A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate, shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended, and expenses incurred, and (2) the amounts requested ...

■ The Bankruptcy Court has the independent authority and responsibility to determine the reasonableness of compensation. *In re N.S. Garrott & Sons*, 54 B.R. 221, 222 (Bktcy.E.D.Ark.1985); *In re Smith*, 48 B.R. 375, 379 (Bktcy.C.D.Ill. 1984); *In re Meade Land and Development Co., Inc.*, 527 F.2d 280, 283 (3rd Cir.1975). However, the burden of proof as to the reasonableness of requested compensation is that of the applicant. *In re Holthoff*, 55 B.R. 36, 39 (Bktcy.E.D.Ark. 1985); *In re Nashville Union Stockyard Restaurant Co., Inc.*, 54 B.R. 391, 396 (Bktcy.M.D.Tenn.1985); *In re Smith, supra; In re Meade Land and Development Co., Inc., supra.*

■ In addition to those requirements outlined in Bankruptcy Rule 2016, a proper fee application must list each activity separately, the date on which it was performed, the attorney who performed the work, a description of the work performed or the subject matter of the work, and the time spent on the work. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bktcy.N.D.Ill. 1985); *In re Anderson*, 49 B.R. 725, 733 (Bktcy.D.Haw.1985); *Cohen & Thiras, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570, 573 (N.D.Ind.1984).

■ The standard for review of an accountant's application for compensation under § 330 is the same as the standard which applies to requests for attorneys' fees. *In re Daig Corporation*, 48 B.R. 121, 136 (Bktcy.D.Minn.1985); *In re Cumberland Bolt & Screw, Inc.*, 44 B.R. 915, 916 (Bktcy.M.D.Tenn.1984).

The most often cited case referring to attorney compensation is *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The *Johnson* case outlines twelve (12) factors which should be considered in the awarding of any fees:

1) the time and labor required, discriminating between legal and non-legal work;

2) the novelty and difficulty of the questions presented, such as cases of first impression;

3) the skill requisite to perform the legal services properly;

4) the preclusion of other employment by the attorney, due to the acceptance of the case, such as conflicts of interest or lack of additional time;

5) the customary fee;

6) whether the fee is fixed or contingent;

7) the time limitations imposed by the client or the circumstances; this is especially important if counsel is called in at a late stage in the proceedings;

8) the amount involved and the results obtained;

9) the experience, reputation, and ability of the attorney;

10) the undesireability of the case, as it affects the professional's reputation in the community;

11) the nature and length of the professional relationship with the clients; and

12) the awards in similar cases.

*Id.* at 718–19.

## THE APPLICATION OF THE ATTORNEY FOR THE DEBTOR–IN–POSSESSION

The attorney in this case was not present at the hearing, as he had taken a position in another state. The present attorney for the Debtor was substituted solely for the purpose of "tying up the loose ends" in the case, and therefore, was unable to explain the Application to the Court. There are however, several problems with this Application which we must analyze. In comparing this Application with the companion application in the *A & S Market, Inc.* case (see footnote 1), we find numerous identical entries as to dates, work performed and time expended. While counsel was not present to explain what appears to be rampant duplicity, the accountant, whose application suffers the same malady, claims that because the two cases were inextricably intertwined, all times spent on various activities were split in half and allocated equally. This is plausible in some instances; however, if this is indeed what the Debtor's attorney did in all cases, it would be necessary for the Court to accept that many of his unexplained letters and telephone calls took unusual and/or unreasonable lengths of time.

The repetitiveness of the activities and the consistently large amounts of time spent on these "intertwined" telephone calls, correspondence, and conferences truly stretch the Court's disposition to rely upon their accuracy.

■ Additionally, of the one hundred and fifteen (115) hours which the Debtor's attorney claims to have spent on this case, fifty-two (52) hours were spent on either telephone calls or correspondence. None of those calls or letters are explained in the Application, as to how they relate to legal matters. Records which give no explanation of the substance of the activities performed are not compensable. *In re Kyran Research Associates, Inc.*, 56 B.R. 629, 631 (Bktcy.D.R.I.1986); *In re General Oil Distributors*, 51 B.R. 794, 801 (Bktcy.E.D.N.Y. 1985); *Cohen & Thiras P.C. v. Keen Enterprises, Inc., supra; In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bktcy.E.D.Pa. 1981).

■ Furthermore, the attorney lists a total of 7.05 hours working on a "Final Accounting and Distribution". This is truly puzzling to the Court. A Final Accounting and Distribution is an activity performed by a Trustee in a Chapter 7 Liquidation proceeding. While the Court is the first to admit that this case *should have been* a Chapter 7 case from the very beginning, it was not handled in that fashion. A liquidating Chapter 11 Plan was confirmed, thereby obviating the need for any document titled "Final Accounting and Distribution". The Court will not compensate counsel for extraneous activities, which operate to the detriment of the creditors.

■ A further difficulty with this fee application is the "clumping" of activities, on a given date, under one block of time. We cannot determine the reasonableness of times expended and the necessity of those activities when they are "clumped" with activities which the Court has determined are not compensable. *In re Holthoff, supra; Cohen & Thiras, P.C. v. Keen Enterprises, Inc., supra; In re Horn & Hardart Baking Co.*, 30 B.R. 938, 944 (Bktcy.E.D. Pa.1983); *In re General Oil Distributors, supra.*

This Court should not be required to guess the amount of time expended on each activity; neither should we be expected to indulge in extensive labor to justify a fee for an attorney who has not done so himself. *In re Horn & Hardart Baking Co., supra; In re Nashville Union Stockyard Restaurant Co., Inc., supra; In re Ander-*

*son, supra.* The policy behind this decision was clearly stated by the Court in *In re Hotel Associates, Inc., supra:*

> The Court does not require a fee application the size of a boring Victorian novel. However, in light of the fact that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors, the Court believes that a justification of such fees in the application for compensation is not an overly burdensome task.

■ The Court does not object to the hourly fee charged by this attorney. However, using many of the *Johnson* factors, the Court makes the following determinations:

1) The time spent by this attorney is not fully compensable because it is impossible to determine the necessity of much of the work, given the insufficient descriptions.

2) The case was not of noteworthy difficulty.

3) The attorney was not precluded from other employment.

4) As the case continued for approximately two (2) years, there is no evidence that time limitations were imposed.

5) The Debtor's attorney requests almost ten percent (10%) of the total receipts in the case, while providing only three percent (3%) to the general unsecured creditors.

6) The attorney produced satisfactory work, but nothing which indicates extraordinary experience or ability.

The Court therefore awards the attorney for the Debtor-in-Possession $4,750.00 in fees and expenses, with the remainder of $5,372.00 to be distributed, *under the liquidating Plan,* to the general unsecured creditors.

## APPLICATION BY ACCOUNTANTS FOR DEBTOR–IN–POSSESSION

The accountant in this case was represented at the hearing by an associate of his firm, who in general terms explained to the Court the basis for the fees charged by the firm. There appear to be many more difficulties with this fee Application than with the application presented by the Debtor's

attorney. Normally, we could rationalize some inadequacies by stating that the accountant is not as familiar with the practices of this Court. However, in this case, the accountant is not only regularly employed in this Court to assist various counsel in their bankruptcy cases, but he is also a member of this Court's Chapter 7 Trustee Panel. His understanding of our practices is therefore at least as lucid as any of our legal practitioners.

Initially, the fee petition presented to the Court is far too vague and/or general.[2] While explanations in narrative form are helpful in attorney fee applications, they are imperative when the professional services rendered are other than legal in nature. Items called "Work Program", "Audit Strategy", "Inner Control Work", and "Various IRS Procedures", without further explanation of their necessity and reasonableness, are not compensable.

Again, as in the attorney's application, we are confronted with fee applications from the accountant for Affinito & Son, Inc. and A & S Market, Inc., which in many respects could be copies of one another. The accountant explained the "comingled" nature of the cases and the "time-splitting" method of allocation. In an least ten (10) instances, that would have required that one individual devote at least half of his *entire* work day to this case; in half of those instances more than eight (8) working hours are listed. This truly strains the Court's credulity.

The Court has been told that the accountants spent a significant amount of their time investigating an allegation of skimming on the part of the individuals who owned and operated the corporation. The original expectation was than an action to recover $300,000.00 would be brought. However, all of the expansive investigation conducted by these accountants produced so little evidence that a settlement was taken—of $10,000.00.

This settlement was also split equally between the two cases. The accountants claim that at least seventy percent (70%) of the time, for which they request compensation, was spent on this investigation. Based upon their fee petition, that would mean that approximately $13,616.40 was spent to recoup $5,000.00. We understand that professionals are to be compensated

---

**2.** As with the Debtor's attorney, the petitions for Affinito & Son, Inc. and A & S Market, Inc. are virtually identical.

equally with their counterparts outside the Bankruptcy Court. But, we must wonder what the reaction would be of a private client of this accountant who was billed $13,616.40 for the collection of $5,000.00. It should have been apparent to these experienced accountants that their time expended was quickly surpassing the possible gain to be received, and any further activity should have been suspended. This Court will not compensate for work which is detrimental to the estate.

The Court must also question the credibility of the accountants when they represent to the Court that at least 70% of the time charged was directed to this investigation. Of the total 174.90 hours listed in the fee application, approximately 77.90 hours are attributable to this curious "Final Accounting and Distribution". That *115%* of the time listed was spent between the investigation and the "Final Accounting and Distribution" certainly explains why these accountants were as busy as they were.

With respect to this item called "Final Accounting and Distribution", the Court is dumbfounded. First, as we stated previously, there is no such activity in a Chapter 11 case. As the accountant in this case is also a Chapter 7 trustee, he is surely aware that such an activity is peculiar to Chapter 7 cases. Furthermore, this Court cannot accept that a case with such a small amount of total receipts and disbursements, and only a limited number of creditors could possibly require 77 hours of time from people who are thoroughly experienced in the production of this type of document.

Additionally, on at least two occasions, these fee applications (both Affinito & Son, Inc. and A & S Market, Inc.) list times meeting with the Debtor's attorney, for which the attorney has no corresponding entry of any type. While it is *possible* that the attorney would neglect to include one short meeting on his time sheets, it is difficult to believe that the attorney would neglect to list substantial amounts of time for more than one date.

■ The accountants include in their fee petition the time spent by a secretary in typing the fee petition, as a fully compensable activity. We have consistently stated that secretarial time qualifies as overhead, and as such, must be paid by the professional person from his fees.

Another point which troubles this Court is the hourly rate which has been charged in this case. The original engagement letter submitted by the accountant allows for various hourly rates from $40.00 to $125.00, with an estimated average of $70.00. However, the average charged, if both cases are combined, is $93.00 per hour. If we look to this case alone, the hourly charge is $111.21. Using either figure, the Court finds this to be significantly above the $70.00 per hour average quoted in the engagement letter, upon which this Court relied, when authorizing this accountant's employment.

Finally, this entire fee application appears moot to this Court. By Order of August 27, 1984, this Court authorized the employment of this accountant. Said Order was modified in the Judge's own hand with the following language:

... [f]ees not to exceed $2,000.00 without further Order of Court.

In carefully checking the file, the Court finds no further request to continue the employment of counsel was ever made. As the Court *purposely* imposed this $2,000.00 limit, we find that no further fees were to be granted without an additional application, notice and hearing.

■ While the Court feels that even this amount is charitable, we award the sum of $2,000.00 to the accountants, with the remainder of the requested sums to be disbursed to the general unsecured creditors according to the *confirmed liquidating Plan.*

An appropriate Order will be issued.

### ORDER OF COURT

Presently before the Court is the accountants for the Debtor's Motion For Reconsideration of July 28, 1986 Order Limiting Compensation of Accountants For Debtor. This Motion was filed with the Clerk of Court on September 30, 1986 and accordingly, the Court is of the opinion that it is not timely filed.

In support of their Motion, said accountants attached thereto, a letter of transmittal and Court Order dated August 27, 1984. The Court Order was clearly executed by someone other than Judge Gerald K. Gibson, as said signature is not the signature of the Judge; and, as on the signature line, "/s/" is affixed.

Had the Applicant and/or his counsel taken the time to review the official Court records, he would have found that the original Order of Court contains the following line in the Judge's own hand:

"Fees not to exceed $2,000.00 without further Order of Court."

We will determine that this oversight is based on negligence, as opposed to willful intent to deceive the Court.

With reference to the work product provided, the Court concludes that its Opinion and Order entered on July 28, 1986 supply sufficient insight as to its reasoning. Based upon the above and the reasons contained in the original Opinion, this Motion For Reconsideration is DENIED.