In re ADVENTIST LIVING CENTERS, INC., Debtor.

Bankruptcy No. 90 B 21285.

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 18, 1991.

See also 137 B.R. 701.

Louis Levit, Ross & Hardies, Chicago, Ill., for debtor.

John H. Ward, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., for Unsecured Creditors Committee.

Lawrence Fisher, D'Ancona & Pflaum, Chicago, Ill., for Ernst & Young.

MEMORANDUM AND OPINION REGARDING THE AMENDED FIRST APPLICATION AND THE SECOND APPLICATION OF ERNST & YOUNG FOR ALLOWANCE OF INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

This matter comes before the Court on the First and Second Applications of Ernst & Young ("E & Y"), accountant and financial advisor to the Debtor, for the Allowance of Interim Compensation and Reimbursement of Expenses, the Objection of the Unsecured Creditors' Committee and the Objection of First Trust National Association ("First Trust") to the First Application. Now, therefore, for the reasons set forth below, the Applications are granted in part and denied in part.

### Facts

On November 14, 1990, the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code, and on November 27, 1990, the Court authorized the retention of E & Y, as accountant and financial advisor to the Debtor, retroactive to November 14, 1990. At the time of retention, Mr. Levit, counsel for the Debtor, informed the Court that the retention order provided for a $75,000 cap on E & Y's services. Specifically, Mr. Levit stated that "[E & Y's] services shall not exceed $75,000 unless it's enlarged by motion presented prior to the incurring of any services beyond that amount." Transcript of Proceedings on November 27, 1990, page 6. Prior to the time the Debtor filed, E & Y received an advance payment of $32,183.

In May 1991, E & Y filed its First Application for Allowance of Interim Compensation and Reimbursement of Expenses requesting $87,525 in fees and $1,416 for expenses incurred for the time period from November 14, 1990 to January 31, 1991. E & Y presently holds $32,183, the balance of the pre-petition retainer.

First Trust objected to the fees requested because they exceeded the $75,000 cap and because the time spent preparing the schedules and statement of affairs was unreasonable. First Trust requested a 25% holdback. The Committee objected to the fees requested because E & Y failed to provide a narrative description of the categories of services rendered and the number of hours and the amount of fees associated with each category and because some of the tasks are lumped together. The Committee requested a 33% holdback.

In response to the objections raised and at the Court's request, on July 9, 1991, E & Y filed its First Amended Application for Allowance of Interim Compensation and Reimbursement of Expenses requesting $87,525 for fees and $539 for expenses incurred for the time period from November 14, 1990 to January 31, 1991. The First Amended Application provides a narrative of the categories of services performed, the total number of hours spent performing services in each category and the total amount of fees for those services.

As a result of the Court's concern that the fees requested far exceeded the $75,000 cap and First Trust's objection to the Appli-

cation for the same reason, E & Y filed a Motion to Modify the Limit on Compensation. On July 19, 1991, the Court entered an Order directing E & Y to file a budget for services to be performed from July 17, 1991 to September 30, 1991. The Court also imposed a $100,000 cap for services rendered from and after July 17, 1991 and set the issue of E & Y's exceeding the original $75,000 cap for hearing on August 21, 1991.

On July 24, 1991, E & Y filed its budget which provided that the estimated fees for the time period from July 17, 1991 to September 30, 1991 would be $13,230. On August 27, 1991, E & Y amended the budget to an estimated $46,040 to include a review of any preferences.

On August 21, 1991, the Court held a hearing regarding the issue of E & Y exceeding the original $75,000 cap, and at that time counsel for E & Y represented that E & Y unintentionally exceeded the cap. Simply stated, E & Y's counsel informed the Court that there was a change in management at E & Y, and the cap was never communicated to the new management. At the hearing, the U.S. Trustee recommended that E & Y be sanctioned 25% of the amount of fees requested for violating the original retention order and exceeding the cap. Neither the Committee or First Trust agreed that a sanction was appropriate. Instead, they stated that the fees in excess of the cap should be awarded as long as they are reasonable.

On August 21, 1991, E & Y also filed its Second Application for Allowance of Interim Compensation and Reimbursement of Expenses requesting $70,670 in fees and $73.50 for expenses incurred for the time period from February 1, 1991 to July 16, 1991. Neither First Trust or the Committee filed an objection to the Application.[1] At the conclusion of the hearing, the Court took the First Amended Application, the Second Application and the issue of E & Y

exceeding the $75,000 cap without court approval under advisement.

*Analysis*

*Accountant's Fees*

I. First Amended Application for Compensation

Pursuant to Section 330 of the Bankruptcy Code, the Court may award reasonable compensation to a professional person employed under Section 327 and Section 1103 of the Bankruptcy Code for the actual and necessary services rendered. The award is based on the nature, extent and value of such services, the time spent on such services, and the cost of comparable services other than in a bankruptcy case. Section 331 of the Bankruptcy Code allows the Court to award interim compensation to any professional employed under Section 327 or Section 1103 of the Bankruptcy Code. Accordingly, the Court may award reasonable compensation to the Debtor's accountant and financial advisor for the actual, necessary services rendered.

An entity seeking compensation under Section 330 or Section 331 of the Bankruptcy Code must file with the court, pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure, "an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." F.R.Bankr.P. 2016. The applicant carries the burden of establishing the reasonableness of its fees. *In re Chas. A. Stevens & Co.*, 105 B.R. 866, 869 (Bankr. N.D.Ill.1989), *citing, In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill. 1987); *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). Additionally, the application must stand on its own merits. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987).

---

1. The Court notes that the Second Application did not go out on twenty days notice as required under Rule 2002 of the Federal Rules of Bankruptcy Procedure. Because the Second Application covers the period between the First Amended Application and July 17, 1991, the date the cap was increased to $100,000 and because the Committee and First Trust have no specific objections to the Second Application, the Court will rule on the Second Application. Any party may raise objections to the Second Application at the time of the final hearing on fees.

■ An accountant's fee application is subject to the same standards as an attorney's fee application. *See In re American International Airways, Inc.*, 69 B.R. 396, 399–400 (Bankr.E.D.Pa.1987); *In re R & B Institutional Sales, Inc.*, 65 B.R. 876, 884 (Bankr.W.D.Pa.1986); *In re Affinito & Son, Inc.*, 63 B.R. 495, 497 (Bankr.W.D.Pa. 1986); *In re Cumberland Bolt & Screw, Inc.*, 44 B.R. 915, 916 (Bankr.M.D.Tenn. 1984).

*A. Lumping*

■ "A proper fee application must list each activity, its date, the attorney who performed the work, a description of the nature and substance of the work performed and the time spent on the work." *Pettibone*, 74 B.R. at 301, *citing, Lindberg Products*, 50 B.R. at 221–22. An applicant may not "lump" several services into one entry. *Pettibone*, 74 B.R. at 302; *In re Horn & Hardart Baking Co.*, 30 B.R. 938, 944 (Bankr.E.D.Pa.1983). Each service should be listed in a separate entry. *In re NRG Resources, Inc.*, 64 B.R. 643, 654 (W.D.La.1986). When an applicant lumps together services, the court is unable to ascertain whether the time spent is reasonable. Accordingly, the applicant should not be compensated for those entries which contain "lumping." *See Pettibone*, 74 B.R. at 302; *Affinito & Son, Inc.*, 63 B.R. at 498; *Horn & Hardart*, 30 B.R. at 944.

■ In this case, the Court has reviewed the First Amended Application submitted and will reduce by fifty percent (50%) the amount of fees requested for the following entries because of lumping:

| Date | Person | Description | Hours |
|------|--------|-------------|-------|
| 11/21/90 | Marozas | Prepare sources and uses of cash report for L. Levit and Court. Work on projected debt capacity of WISC facilities given divestment activity. | 3.5 |
| 01/09/91 | Marozas | On site at ALC: Review corporate budget for 1991; input financial information in model for forecasting; check validity of numbers used for A/P, A/I, short term indebtedness. | 11.0 |
| 01/17/91 | Baehr | Business plan development. Conference call with ALC representatives. Conversations with Paine Webber. Review of five-year facility forecasts. | 4.0 |
| 01/24/91 | Baehr | Conference call with ALC representatives. Conversations with ALC counsel. Preparation of detailed 1991 facility budgets with monthly cash flow forecast. | 4.0 |
| 01/24/91 | Marozas | Prepare material for presentation at ALC. Recalculate all debt service assumptions using different coverage assumptions; check for accuracy, reprint and send copies to all participants at meeting. | 7.0 |
| 01/28/91 | Baehr | Conference call with ALC representatives. Preparation of detailed 1991 facility budgets with monthly cash flow forecast. | 4.0 |
| 11/30/90 | Marozas | Formalize Kirk's analysis of reimbursement of interest expense for Medicaid. Review financial figures from ALC forecasts for accuracy. Update spreadsheets with financial information. | 4.0 |

Accordingly, the Court will reduce E & Y's fee request by $3,307.50 (50% of $6,615).

### B. Intraoffice Conferences and Meetings

■ As a general rule, no more than one attorney may charge the estate for intraoffice conferences, meetings and court appearances unless an adequate explanation is given. *See In re Chicago Lutheran Hospital Association*, 89 B.R. 719 (Bankr. N.D.Ill.1988). In *Chicago Lutheran Hospital*, the bankruptcy court stated:

> ... Generally, attorneys should work independently, without the incessant "conferencing" that so often forms a major part of many fee petitions. While some intraoffice conferences may be necessary, no more than one attorney may charge for it unless an explanation of each attorney's participation is given. *In re R & B Institutional Sales, Inc.*, 65 B.R. 876, 882 (Bankr.W.D.Pa.1986).

*Pettibone*, 74 B.R. at 303. While the participation of more than one counsel is sometimes necessary in complex matters and compensation should be awarded accordingly, the Court must emphasize that there is a difference between duplication and coordination of services. *In re Holthoff*, 55 B.R. 36 (Bankr.E.D.Ark.1985). Another example of a kind of work for which only one attorney ordinarily will be compensated is court appearances. When more than one attorney appears in court on a motion or argument or for a conference, no fee should be sought for non-participating counsel. *Pettibone*, 74 B.R. at 303, *citing, Jensen–Farley Pictures*, 47 B.R. 557, 583 [Bankr.D.Utah 1985]. An exception to this rule would be a showing of some specific reason requiring attendance by more than one attorney at a particular court hearing. *See Holthoff*, 55 B.R. at 40.

■ The same is true for accountants. Because the issue of more than one accountant billing for intraoffice conferences and meetings arises in most large cases, the Court finds it necessary and useful to establish guidelines regarding the billing practices for multiple parties for intraoffice conferences and meetings. The guidelines are premised on the nature of the conference. Accordingly, the Court will allow the following billing practices for the following types of conferences:

■ 1. *Direction Conference.* In a direction conference one accountant directs another accountant to perform a task. Thus, one accountant is active and the other is passive. The Court will only allow the active accountant to bill for his time.

■ 2. *Document Review Conference.* In a document review conference one accountant reviews another's work product. Again, one accountant is active and the other passive. Thus, the Court will only allow the active accountant to bill for his time.

■ 3. *Status Conference.* In a status conference one accountant advises another as to matters pending in a case and often assigns future work to be performed. Because status conferences incorporate input from everyone involved, the Court will allow all accountants to charge their time.

■ 4. *Strategy Conference.* In a strategy conference one or more accountants determine the course of action to be taken. Because strategy conferences involve input from all parties, the Court will allow all accountants present to bill for their time.

■ 5. *Update Conferences.* In an update conference one accountant merely updates another on a case. No further action is required as in a status conference. Accordingly, the Court will allow only the active accountant to bill for his time.

The Court notes that this list of conferences is not exhaustive or all-encompassing. It merely serves as a guideline. The Court cautions accountants, however, against the excessive use of any of the conferences mentioned above.

■ In this case, the Court will deny the request for fees for the following en-

tries because they are charges by passive accountants for intraoffice conferences:

| Date | Person | Description | Hours |
|------|--------|-------------|-------|
| 11/26/90 | Marozas | Discuss bankruptcy issues and procedures with Tamosuinas. | 1.0 |
| 12/11/90 | Marozas | Meet with Tamosiunas re: monthly reporting. | 1.0 |
| 01/02/91 | Kirk | Meet with Marozas re: information needed for meeting with ALC management on 1/7/91. | 1.0 |
| 01/22/91 | Kirk | Meet with Marozas re: new format of report. | .5 |

Accordingly, the Court will reduce E & Y's fee request by $530 (2.0 hours at $130 per hour plus 1.5 hours at $180 per hour).

C. *Levels of Review*

■ Consistent with the reasoning in *In re Continental Illinois Securities Litigation*, 572 F.Supp. 931 (N.D.Ill.1983), at the hearing on E & Y's retention the Court specifically stated that, "[a]s far as the accountants are concerned, I will award fees for one level of work and one level of review ..." Transcript of Proceedings held on November 27, 1990, page 11. For example, E & Y may bill for a senior manager to perform a service and for a partner to review the senior manager's work. The Court did not mean that one partner may bill for reviewing another partner's work. The Court, therefore, will deny the request for fees for the entries dated 11/24/90 (1.0 hour) and 12/09/90 (1.0 hour) where Mr. Tamosunias, a partner, reviewed the work of Mr. Baehr, a partner with a higher billing rate. Accordingly, the Court will reduce E & Y's fee request by $525.

D. *Appropriate Level of Skill*

■ In general, a partner will only be compensated at his hourly rate for work that warrants a partner's attention. If a partner spends time performing services that a senior partner, senior consultant, consultant or paraprofessional could do, the partner will be compensated at the lower rate. The same is true for other employees. *See Wildman*, 72 B.R. at 710. In this case, the Court will reduce the hourly rate charged for the following services to $90 because the Court finds that a paraprofessional could have performed the services:

| Date | Person | Description | Hours |
|------|--------|-------------|-------|
| 12/13/90 | Marozas | Prepare bankruptcy mailings for 3,000 ALC creditors (fold at E & Y, transfer to ALC). | 4.0 |
| 12/18/90 | Janavitz | Data entry for projected financials. | 1.6 |
| 12/19/90 | Janavitz | Collate data for financials. | 1.6 |
| 12/26/90 | Janavitz | Data entry for income statements. | 2.3 |
| 12/20/90 | Marozas | Input financial data into computer. | 2.5 |
| 12/21/90 | Marozas | Begin to input actual financial data for each facility into model. Input 1989 balance sheet figures by facility. | 7.0 |
| 12/26/90 | Marozas | Input 1989 income statement into model for each facility. | 4.0 |
| 12/26/90 | Marozas | Input year to date 1990 balance sheet information. | 4.5 |
| 12/26/90 | Marozas | Input year to date 1990 income statement for each facility. | 5.0 |
| 01/10/90 | Marozas | Input calculated numbers in model to be used in cash flow analysis. | .8 |
| 11/30/90 | Marozas | Assemble workpapers for ALC. | 1.0 |
| 01/04/91 | Marozas | Prepare workpapers into files. | 1.0 |

Accordingly, the Court will reduce E & Y's fee request by $1,412 ($4,589 [35.3 hours at $130 per hour] less $3,177 [35.3 hours at $90 per hour]).

### E. *Routine Recording of Time Increments*

An accountant should record the actual amount of time spent on a specific task. *See Wildman* 72 B.R. at 708. Thus, the Court will not allow an accountant to bill in routine increments of time. As a general rule, the Court prefers that accountants and attorneys record increments of one tenth of one hour. In this case, with very minor exceptions, it appears that E & Y billed in one hour increments. The Court finds that E & Y's billing practice of charging in one hour increments is unacceptable. The Court, therefore, will reduce E & Y's fee award by ten percent (10%). Accordingly, E & Y's fee request will be reduced by $8,175 (10% of $81,750).

### F. *Exceeding the $75,000 Cap*

The Court is deeply troubled with the fact that E & Y greatly exceeded the $75,000 cap. At the time it approached the cap, it should have advised the Debtor and the Court that it was exceeding the cap and sought to modify it. The change in management at E & Y is no excuse. Incoming management should have examined the parameters of E & Y's employment before continuing to provide services. Additionally, outgoing management should have informed incoming management of the cap. To date, E & Y's fees are nearly double the $75,000 cap. Upon reviewing the Applications and the transcript submitted, and hearing the arguments of counsel, the Court agrees with the U.S. Trustee's recommendation that a sanction is appropriate. However, the Court will impose a twenty percent (20%) penalty and reduce E & Y's fee request by $18,399.49 (20% of $73,575.45).

In response to First Trust's objection that the time spent preparing the Schedules and Statement of Affairs the Court finds that because of the complexity of the case and the numerous facilities involved, the time is not unreasonable.

In conclusion, the Court finds that E & Y is entitled to $58,860.36 as and for reasonable accountant's fees. Although the Committee requests a thirty-three percent (33%) holdback, and First Trust recommends a twenty-five percent (25%) holdback, the Court finds that a fifteen percent (15%) holdback is appropriate until a Plan is confirmed. Accordingly, the Court presently awards E & Y $50,031.31 ($58,860.36 — $8,829.05 (15%)).

### *Expenses*

Although the expenses requested are small compared to the fees requested, the Court still requires an accurate detailed record which sets forth the reasons for incurring such expenses. *In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr.N.D.Ill.1989). The Court will not assume an expense is necessary. Therefore, E & Y has the burden of establishing that it is entitled to certain expenses. In this case, the Court will deny E & Y's entire request for expense reimbursement because the entries request the same exact amount for mileage, parking and tolls each time someone from E & Y went to ALC's corporate offices regardless of how long the person was at the office. Additionally, E & Y failed to submit any supporting documentation to establish whether the expenses were necessary. Accordingly, the Court is unable to determine whether the expenses incurred were necessary.

## II. Second Application for Compensation

### *Accountant's Fees*

In the Second Application for Compensation and Reimbursement of Expenses, E & Y requests $70,670.13 in fees and $73.50 for expenses incurred for the time period

from February 1, 1991 to July 16, 1991. Based on the reasoning set forth above the Court will deny the request for fees for the following entries.

Accordingly, the Court will reduce E & Y's fee request by $1,709.

Accordingly, the Court will reduce E & Y's fee request by $430 (1.0 hour at $180 per hour plus 1.0 hour at $250 per hour).

### A. *Intraoffice Conferences and Meetings.*

The Court will deny E & Y's request for fees for the following entries because they are charges for passive accountants at intraoffice conferences:

| Date | Person | Description | Hours |
|------|--------|-------------|-------|
| 02/28/91 | Marozas | Meet with Baehr to discuss changes to format and content of fourth draft of plan of reorganization. | 1.0 |
| 03/06/91 | Tamosunias | Discussions and calculation review with R. Baehr re: fourth draft of plan of reorganization—in particular liquidation issues. | 1.1 |
| 03/12/91 | Marozas | Review draft of plan of reorganization with O. Kirk and R. Baehr. | 3.0 |
| 03/12/91 | Kirk | Meeting with R. Baehr and W. Marozas of fourth draft of plan of reorganization. | 3.0 |
| 03/19/91 | Kirk | Meet with W. Marozas to review changes to presentation. | 1.5 |
| 03/28/91 | Marozas | Meet with O. Kirk to review format of report for ALC management. | .5 |
| 04/01/91 | Marozas | Meet with O. Kirk to discuss recalculation of FTE's for ALC due to inaccurate data from ALC. | .8 |
| 06/17/91 | Marozas | Meet with R. Baehr to discuss list of work products to be assembled for court appearance to support E & Y fee application. | .5 |

### B. *Level of Review.*

Because the Court will only allow for one level of review, the Court will deny the fees requested for the following entries:

| Date | Person | Description | Hours |
|------|--------|-------------|-------|
| 03/21/91 | Kirk | Reviewed final draft of Plan with R. Baehr and D. Tamosunias. | 1.0 |
| 03/21/91 | Tamosunias | Reviewed final draft with O. Kirk and R. Baehr. | 1.0 |

### C. *Appropriate Level of Skill.*

The Court will reduce the hourly rate charged for the entries listed below to $90 because the services could have been performed by the paraprofessional:

| Date | Person | Description | Hours |
|---|---|---|---|
| 02/15/91 | Marozas | Assemble workpapers and files relating to third draft of plan of reorganization. | 4.3 |
| 03/22/91 | Marozas | Continue work begun on 3/2/91— copy all relevant documents for workpapers and organize supporting documents for ALC. | 4.2 |
| 03/25/91 | Marozas | Assemble some of the workpapers which will be involved in responding to creditors' inquiries. | 1.8 |
| 02/05/91 | Marozas | Deliver final draft of cash budget to B. Fishman. | .5 |

Accordingly, the Court will reduce E & Y's fee request by $432 ($1,404 [10.8 hours at $130 per hour]—$972 [10.8 hours at $90]).

### D. *Exceeding the $75,000 Cap.*

Because E & Y exceeded the $75,000 cap without prior court approval, the Court will impose a twenty percent (20%) sanction against the fees awarded on the Second Application for Interim Compensation.

In conclusion, the Court awards E & Y $54,479.30 as and for reasonable accountant's fees and, until a Plan is confirmed, imposes a fifteen percent (15%) holdback. Accordingly, the Court presently awards E & Y $46,307.40.

### *Expenses*

Because E & Y failed to provide the Court with sufficient documentation to establish that the expenses incurred were necessary, the Court denies E & Y request for reimbursement in its entirety.

■■■ E & Y should note that in the future the Court will deny any and all fees in excess of the $100,000 cap unless the Court modifies the cap prior to E & Y reaching the cap. The Court also requests that the time spent preparing the fee application be set forth in a separate category.

IT IS HEREBY ORDERED THAT:

1. On the First Amended Application for Interim Compensation, Ernst & Young is awarded $50,031.31 as and for reasonable accountant's fees, and Ernst & Young's request for expense reimbursement is denied. The balance of the fees, $8,829.05, which constitutes the fifteen percent (15%) holdback, will be considered at the time of the final hearing on accountant's fees.

2. On the Second Application for Interim Compensation and Reimbursement of Expenses, Ernst & Young is awarded $46,307.40, and Ernst & Young's request for expense reimbursement is denied. The balance of the fees $8,171.90, which constitutes the fifteen percent (15%) holdback, will be considered at the time of the final hearing.

3. Ernst & Young shall apply the $32,183 it is holding against said awards.

4. The Debtor shall pay the balance of said award within twelve (12) days of the date of this Order.